## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. _____

ANDRES AVILES, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiffs,

v.

THE SPECTRANETICS CORPORATION,
R. JOHN FLETCHER,
SCOTT DRAKE,
B. KRISTINE JOHNSON,
WILLIAM C. JENNINGS,
DANIEL PELAK,
JOSEPH M. RUGGIO,
MARIA SAINZ, and
TODD SCHERMERHORN,

        Defendants.

---

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

---

Plaintiff Andres Aviles ("Plaintiff"), by his attorneys, alleges upon information and belief,

except for his own acts, which are alleged on knowledge, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public stockholders of The

Spectranetics Corporation ("Spectranetics" or the "Company") against the members of

Spectranetics' Board of Directors collectively, the "Board" or the "Individual Defendants," as

further defined below) for violations of Section 14(d)(4), and Rule 14D-9 promulgated thereunder

by the U.S. Securities and Exchange Commission (the "SEC"), and Sections 14(e) and 20(a).

Specifically, Defendants solicit the tendering of stockholder shares in connection with the sale of

the Company to Philips Holding USA, Inc. ("Parent") through Parent's wholly-owned subsidiary, HealthTech Merger Sub, Inc. ("Merger Sub," and together with Parent, "Philips") through a recommendation statement that omits material facts necessary to make the statements therein not false or misleading.  Stockholders need this material information to decide whether to tender their shares or pursue their appraisal rights.

2.      On June 27, 2017, the Company announced that it had entered into a definitive agreement (the "Merger Agreement"), by which Philips would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Spectranetics common stock for $38.50 per share in cash (the "Merger Consideration").  The Tender Offer, commenced on July 12, 2017, is set to expire at midnight New York City Time (one minute after 11:59 P.M.) on August 9, 2017. The Proposed Transaction has a value of approximately $1.7 billion.

3.      In connection with the commencement of the Tender Offer, on July 12, 2017, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the background of the merger. Without all material information, Spectranetics stockholders cannot make an informed decision regarding the exchange of their shares in the Tender Offer.  The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision regarding tendering their shares in connection with the Proposed Transaction.

4.      For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the

Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under §§ 14(d), 14(e), and 20(a) of the Exchange Act, 15 U.S.C. § 78aa.  The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Spectranetics maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Spectranetics.

9.    Spectranetics is a corporation organized and existing under the laws of the State of Delaware.  It maintains principal executive offices at 9965 Federal Drive, Colorado Springs, Colorado, 80921.

10.    Defendant R. John Fletcher ("Fletcher") has served as a director of the Company since March 2002 and was elected Chairman of the Board in December 2010.

11.    Defendant Scott Drake ("Drake") has served as a director of the Company since 2011. Drake has also served as President and Chief Executive Officer ("CEO") of the Company since 2011.

12.    Defendant B. Kristine Johnson ("Johnson") has served as a director of the Company since May 2012.

13.    Defendant William C. Jennings ("Jennings") has served as a director of the Company since 2009.

14.    Defendant Daniel Pelak ("Pelak") has served as a director of the Company since November 2010.

15.    Defendant Joseph M. Ruggio, M.D. ("Ruggio") has served as a director of the Company since February1997.

16.    Defendant Maria Sainz ("Sainz") has served as a director of the Company since 2010.

17.    Defendant Todd Schermerhorn ("Schermerhorn") has served as a director of the Company since March 2015.

18.    Defendants referenced in ¶¶ 10 through 17 are collectively referred to as Individual Defendants and/or the Board.

19.     Relevant non-party Philips is a corporation organized and existing under the laws of the State of Delaware.  Philips maintains its principal executive offices at 3000 Minuteman Road, Andover, Massachusetts, 01810.

20.     Relevant non-party Merger Sub is a Delaware corporation and wholly owned subsidiary of Philips that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Spectranetics common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

22.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  The Recommendation Statement states that, as of June 26, 2017, there were 43,848,089 shares of common stock outstanding.  All members of the Class may be identified from records maintained by Spectranetics or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

23.     Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Recommendation Statement in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

24.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

### FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background*

27.     Spectranetics develops and markets tools to manage cardiovascular surgeries. It "provides expert tools, training and support designed to help successfully manage every cardiac lead, modify all plaque and eradicate restenosis and amputation." Restenosis is the recurrence of a narrowing of a blood vessel, often following treatment to remove a blockage. Founded in 1984, the Company has developed and acquired a number of medical devices used in the treatment of cardiovascular conditions.

*The Sale Process*

28.     Beginning in January 2017 at the J.P. Morgan Healthcare Conference, Defendant Drake and the Company's Chief Operating Officer, Mr. Shahriar Matin, met with individuals at Philips regarding potential growth in the market.

29.     In February 2017, Defendant Drake and Mr. Matin met again with individuals at Phillips, who indicated that Philips was interested in exploring a strategic transaction with Spectranetics.

30.    On March 14, 2017, Philips presented a non-binding indication of interest for a purchase price of $34.00 per share. The Board initially rejected this price as too low and potentially endangering the launch of the Stellarex Drug Coated Balloon platform ("Stellarex"), but permitted Company management to continue meeting with and negotiate a potential strategic transaction with Philips.

31.    Further negotiations led to small increases in the proposed price offered by Philips, and the Board authorized J.P. Morgan Securities LLC ("J.P. Morgan") to reach out to four other potential counterparties, Party A, Party B, and two others. Party A and Party B indicated that they might be interested in a potential transaction, but not in the immediate future. A Party C later demonstrated a potential interest in a non-merger strategic transaction, but did not ultimately make a proposal. Ultimately, the Board elected to continue negotiating with Philips but not reach out to any additional parties.

32.    After additional due diligence, Philips agreed to a price of $38.50 on June 21, 2017 given positive steps toward FDA approval of Stellarex.

33.    After further negotiation of the merger agreement, the Board met on June 27, 2017 to discuss the final terms of the Merger Agreement. After J.P. Morgan presented its fairness opinion and analysis, the Board unanimously authorized the execution of the Merger Agreement.

34.    Following the meeting, the Company and Philips executed the Merger Agreement and other transaction documents.

35.    Later that day, the Company and Philips then issued a press release, reading in relevant part:

> Amsterdam, the Netherlands and Colorado Springs, CO, U.S. – Royal Philips (NYSE: PHG; AEX: PHIA), a global leader in health technology, and The Spectranetics Corporation (NASDAQ: SPNC), a U.S.-based global leader in vascular intervention and lead management solutions, today announced that

they have entered into a definitive merger agreement. Pursuant to the agreement, Philips will commence a tender offer to acquire all of the issued and outstanding shares of Spectranetics for USD 38.50 per share, to be paid in cash upon completion. This represents a 27 percent premium to Spectranetics closing price on June 27, 2017. The implied enterprise value is approximately EUR 1.9 billion, inclusive of Spectranetics' cash and debt. The board of directors of Spectranetics has approved the transaction and recommends the offer to its shareholders. The transaction is expected to close in the third quarter of 2017.

Philips has a leadership position in the EUR 6+ billion image-guided therapy market with a unique portfolio of interventional imaging systems and devices, planning and navigation software, and services, serving a large, global customer base and supported by a global network of leading clinical partners.

The acquisition of Spectranetics will further expand and strengthen Philips' Image-Guided Therapy Business Group. Spectranetics is a leader in vascular intervention to treat coronary and peripheral artery disease, and in lead management for the minimally invasive removal of implanted pacemaker and implantable cardioverter defibrillator (ICD) leads. Spectranetics is currently growing double digits and projects 2017 sales to be in the range of USD 293 million to USD 306 million.

Spectranetics' device portfolio includes a range of laser atherectomy catheters for treatment of blockages with laser energy in both coronary and peripheral arteries; the AngioSculpt scoring balloon used to mechanically push a blockage aside in both peripheral and coronary arteries; the AngioSculptX scoring balloon, which is the only drug-coated scoring balloon in the market, and the Stellarex drug-coated balloon, which treats common to complex lesions while inhibiting the recurrence of these blockages. All of these market segments exhibit high growth rates.

The Stellarex drug-coated balloon is a key growth driver in Spectranetics' portfolio. Stellarex already is CE-marked, and under review by the FDA for premarket approval in the U.S. The drug-coated balloon segment is one of the fastest growing segments in peripheral vascular procedures. Top-tier outcomes in the most complex patient population studied in drug-coated balloon IDE trials indicate that Spectranetics' Stellarex has excellent clinical performance with proven results in complex disease.

"Today's exciting announcement follows a series of bolt-on acquisitions to strengthen our portfolio across the health continuum," said Frans van Houten, CEO of Royal Philips. "Building on the successful integration of the Volcano acquisition in early 2015, we are now accelerating our strategic expansion into therapy devices with the agreement to acquire Spectranetics. This transaction is expected to be revenue growth and profit accretive by 2018, given the projected revenue and productivity synergies. Spectranetics' highly competitive product

range, integrated with our portfolio of interventional imaging systems, devices, software and services will enable clinicians to decide, guide, treat and confirm the appropriate cardiac and peripheral vascular treatment to deliver enhanced care for patients with better outcomes, as well as significantly boost recurring revenue streams for Philips."

"We are pleased to announce this agreement with Philips, which will deliver significant value to our shareholders," said Scott Drake, President and CEO of Spectranetics. "Combining Philips' innovations in image-guided therapy with Spectranetics' portfolio and expertise in the therapeutic device space will create exciting opportunities and allow us to accelerate growth. As part of Philips, we will have the scale and resources to expand Spectranetics' portfolio of highly differentiated products, our robust innovation pipeline, and our clinical data compendium. This transaction is a testament to the hard work and dedication of Spectranetics' talented teammates. We have tremendous respect for Philips, as our two companies have a shared view on the importance of culture, values, and innovation, as well as a shared focus on improving patients' lives around the world. We look forward to a smooth transition."

### The Materially Misleading and Incomplete Recommendation Statement

36.     Defendants have misstated and omitted material information necessary for an informed vote on the Proposed Transaction.  Specifically, the Recommendation Statement, which recommends that the Company's stockholders tender their shares in the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act as set forth below.

### Financial Projections of the Company

37.     The Recommendation Statement omits material information concerning the Company's financial projections. According to the Recommendation Statement, J.P. Morgan used the Company's forecasts of unlevered free cash flows in performing its discounted cash flow analysis.  While the Recommendation Statement discloses EBITDA and certain key cash flow items, it fails to disclose the values of unlevered free cash flows utilized by J.P. Morgan in valuing the Company.

38.     Additionally, the Recommendation Statement discloses that the Company provided the Board and J.P. Morgan with three separate sets of projections, Management Case 1, Management Case 2, and Management Case 3.  However, the Recommendation Statement omits any of the assumptions or strategies that underlie these separate scenarios. While Management Case 3 offers more optimistic figures than Management Case 1, nothing in the Recommendation Statement provides a basis for these differences.  Spectranetics stockholders cannot understand whether each scenario represents a different strategic plan, or simply a slightly more optimistic vision of future cash flows.  With the application for FDA approval of the Company's important Stellarex medical device still pending, it is unclear whether any of the scenarios assumes FDA approval or rejection of this device and a resulting impact on future cash flows, or what other assumptions underpinned the differences. These omissions renders the remaining disclosures regarding the financial projections and financial analyses materially misleading as to the reliability of said projections.

39.     As Suraj Kalia, analyst with Northland Capital Markets stated, "[w]ith the DCB market estimated to be over $1 billion, the logic of selling the company prior to Stellarex PMA approval befuddles us . . . . A Stellarex PMA approval itself would have carried the stock to levels higher than the current amount, hence the 27 percent premium to the stock price, in our view, does not properly reflect the premium that should have been deserved for the stock."

40.     Given the lack of information disclosed regarding the various management forecast scenarios, it is impossible for stockholders to know whether these projections assumed the approval of the Stellarex project and the resulting increase in cash flows and stock price.

41.     The Recommendation Statement also omits the GAAP projections necessary to reconcile the non-GAAP projections of unlevered free cash flow used in the *Discounted Cash Flow* analysis performed by J.P. Morgan.

42.     Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction.   The Recommendation Statement, which recommends that the Company's stockholders tender their shares in the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act.

### *J.P. Morgan's Financial Analyses*

43.     In connection with J.P. Morgan's *Public Trading Multiples* analysis, the Recommendation Statement fails to disclose the individual multiples for each company that were utilized in the analysis, or any summary values of the multiples such as low, high, median, or mean. Without such information, Spectranetics' stockholders are unable to determine how the multiples used in determining Spectranetics' value compare to the other companies. As a result, stockholders are unable to assess whether J.P. Morgan utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

44.     In connection with J.P. Morgan's *Selected Transaction Analysis*, the Recommendation Statement fails to disclose the individual multiples for each transaction that were utilized in the analysis. Without such information, Spectranetics' stockholders are unable to determine how the multiples used in determining Spectranetics' value compare to the other companies. As a result, stockholders are unable to assess whether J.P. Morgan utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading

*Potential Management Conflicts of Interest*

45.     The Recommendation Statement discloses that, on May 31, 2017, the Compensation Committee directed management to defer negotiations of employee benefits with Philips until after it had finalized price negotiations.

46.     However, the Recommendation Statement omits any information regarding the first instance of retention-related communications that prompted this concern on the part of the Compensation Committee. By omitting this information, the Recommendation Statement materially misleads Spectranetics stockholders as to management's interests throughout the strategic process in encouraging a bid from Philips at the expense of outreach to parties other than the four entities other than Philips futilely contacted during the process.

47.     Without the material information described above, stockholders cannot make an informed decision whether or not to tender their shares in favor of the Proposed Transaction or seek appraisal for their shares, and have been harmed thereby. These omissions materially mislead Spectranetics stockholders as to the as to the accuracy and value of the Recommendation Statement's other disclosures.

48.     Defendants failure to provide Spectranetics' stockholders with the foregoing material information constitutes a violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information.  The material information described above that was omitted from the Recommendation Statement takes on actual significance in the minds of Spectranetics stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about

whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## CLAIMS FOR RELIEF

### COUNT I
**Claims Against All Defendants for Violations of § 14(e) of the
Securities Exchange Act of 1934**

49.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

51.    As discussed above, Spectranetics filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

52.    Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction.   Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53.    The Recommendation Statement was prepared, reviewed and/or disseminated by defendants.   It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic

value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

54.    In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

55.    The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

56.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

57.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II
### Claims Against All Defendants for Violations of § 14(d)(4) of the
### Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)

58.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

60.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

61.     The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

62.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

63.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

64.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT III

### Against the Individual Defendants for
### Violations of § 20(a) of the 1934 Act

65.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66.    The Individual Defendants acted as controlling persons of Spectranetics within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Spectranetics and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.    They were thus directly involved in the making of the Recommendation Statement.

69.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

70.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions

as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

(B)     declaring that the Recommendation Statement is materially false or misleading;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction;

(D)     in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

# JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  July 21, 2017                                    Respectfully submitted,


                                                                  By:  ___*s/Jeffrey M. Villanueva*___
                                                                  Jeffrey M. Villanueva
                                                                  **JEFFREY M. VILLANUEVA, P.C.**
                                                                  1755 Blake Street, Suite 225
                                                                  Denver, CO 80202
                                                                  (303) 295-7511
                                                                  Email: jeff@jmvpclaw.com
                                                                  *Attorneys for Plaintiff*


**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
        etripodi@zlk.com
*Attorneys for Plaintiff*